OPINION
{¶ 1} Freedom Concepts, Inc. ("Freedom"), defendant-appellant, appeals a judgment of the Franklin County Court of Common Pleas in favor of the Ohio Department of Public Safety ("Department"), plaintiff-appellee.
 {¶ 2} Freedom is a liquor permit holder that operates "Scorchers," an establishment located in Akron, Ohio. On October 18, 2000, Greg Croft and George Pitre, Department agents, visited Scorchers. After investigating the premises, the Department confiscated gambling machines and other items from Scorchers. The Department charged Freedom with two violations of Ohio gambling laws: (1) allowing gaming or wagering on a game and/or scheme of skill and/or chance, to wit, tip ticket dispensing machine, in violation of Ohio Adm. Code 4301:1-1-53; and (2) allowing gaming or wagering on a game and/or scheme of skill and/or chance, to wit, electronic video gambling device, in violation of Ohio Adm. Code4301:1-1-53. The Ohio Liquor Control Commission ("Commission") held a hearing on the two violations and found Freedom had violated Ohio Adm. Code 4301:1-1-53 by permitting patrons to play slot machines and/or tip ticket machines on its premises.
 {¶ 3} As a result of the Commission's decision, on December 28, 2000, the Department filed a petition for forfeiture against Freedom pursuant to R.C. 2933.43 and 2901.01(M) regarding the "Lucky Shamrock" machine, "Popp-Opens" (variously referred to in the record as "Popps-Open" and "Pop-Open") machine, tip tickets, and $4,533 from the machines, which were all seized from Scorchers. On October 3, 2001, the Department sent notice of the hearing to Freedom and to Freedom's attorney, Mark Gutentag.
 {¶ 4} On November 8, 2001, the petition for forfeiture came before the magistrate for a hearing. Freedom contended that the petition for forfeiture should be dismissed because the Department did not comply with the notice requirements of R.C. 2933.43(C) by failing to give notice of the forfeiture hearing to the owners of the machines and other property at issue. Croft testified that, during his investigation, he was told by Frank Gronowski, identified as the manager of Scorchers, that the Lucky Shamrock machine was owned by George Music (which is owned by Phil George) and that the Popp-Opens machine was owned by JJ Tickets. However, Freedom presented evidence of a July 6, 2001 complaint filed by Flare Game Technology, Inc. ("Flare Game") and Mid-Ohio Vending, Inc. ("Mid-Ohio") in a separate action, case No. 01CV-6454, in which the two companies contested the status of the machines as "gambling devices" and sought a preliminary injunction to prevent the Department from seizing the machines. The 01CV-6454 complaint contained affidavits by Phil George, as the president of Flare Game, and James Jackson, as president of Mid-Ohio. Gutentag was counsel for Flare Game and Mid-Ohio in case No. 01CV-6454. On August 14, 2001, the court in case No. 01CV-6454 found the machines were gambling devices. At the forfeiture hearing in the present case, Freedom contended that case No. 01CV-6454 put the Department on notice that Flare Game and Mid-Ohio were the owners of the machines at Scorchers and that notice had to be given to them as owners. The Department argued that it complied with the requirements of notice in R.C. 2933.43(C) by making reasonably diligent inquiries as to the ownership of the property.
 {¶ 5} On November 19, 2001, the magistrate issued a decision finding that the Department had complied with the notice requirements set forth in R.C. 2933.43, and, thus, forfeiture was proper. The magistrate found that, although several different entities were referred to in the record as owners of the machines, Freedom failed to present any evidence and testimony as to actual ownership and refused to identify the owners in case No. 01CV-6454. The magistrate found it would be inequitable for Freedom to refuse to identify the owners in case No. 01CV-6454 while claiming no notice was given in the present case. Further, the magistrate found there was no claim that the owners of the property did not have actual notice of the forfeiture hearing because notice was sent to their counsel, Gutentag. There was also evidence admitted that the Department posted notice of the hearing in the Akron Beacon Journal. The magistrate concluded that the Department had made a reasonably diligent inquiry into the owners of the machine.
 {¶ 6} Freedom filed objections to the magistrate's decision. On August 28, 2002, the trial court issued a decision denying Freedom's objections and adopting the magistrate's decision. Freedom appeals the trial court's judgment, asserting the following assignment of error:
 {¶ 7} "The Franklin County Common Pleas Court erred to the defendant-appellant's prejudice in determining that the owner of certain equipment and funds were given proper notice of forfeiture hearing pursuant to R.C. § 2943.33 [sic]."
 {¶ 8} Freedom argues the trial court erred in finding that proper notice was given to the owner of the confiscated machines and monies pursuant to R.C. 2933.43. R.C. 2933.43 contains the procedure for a proceeding regarding the forfeiture of contraband. R.C. 2933.43(C) provides, in relevant part:
 {¶ 9} "The petitioner shall conduct or cause to be conducted a search of the appropriate public records that relate to the seized property for the purpose of determining, and shall make or cause to be made reasonably diligent inquiries for the purpose of determining, any person having an ownership or security interest in the property. The petitioner then shall give notice of the forfeiture proceedings by personal service or by certified mail, return receipt requested, to any persons known, because of the conduct of the search, the making of the inquiries, or otherwise, to have an ownership or security interest in the property, and shall publish notice of the proceedings once each week for two consecutive weeks in a newspaper of general circulation in the county in which the seizure occurred. The notices shall be personally served, mailed, and first published at least four weeks before the hearing. They shall describe the property seized; state the date and place of seizure; name the law enforcement agency that seized the property and, if applicable, that is holding the property; list the time, date, and place of the hearing; and state that any person having an ownership or security interest in the property may contest the forfeiture."
 {¶ 10} Compliance with the forfeiture statute is mandatory, and strict compliance with the notice and publication provisions of R.C.2933.43(C) is required. Ohio Dept. of Liquor Control v. Sons of Italy Lodge 0917 (1992), 65 Ohio St.3d 532, syllabus. As the Ohio Supreme Court found:
 {¶ 11} "There is not even a remote indication, let alone `clear and unequivocal legislative intent,' that the General Assembly considers the procedures set forth in R.C. 2933.43(C) to be permissive guidelines rather than mandatory instructions. Quite the contrary, the General Assembly chose mandatory language to assure that due process would be afforded in all cases in which the state seeks forfeiture. The General Assembly itself provided detailed safeguards in R.C. 2933.43(C), including the requirements that diligent inquiry regarding ownership of the seized property be undertaken and that specific notice requirements and time limits be followed." Id. at 535.
 {¶ 12} The Court further explained:
 {¶ 13} "Forfeitures are not favored by the law. The law requires that we favor individual property rights when interpreting forfeiture statutes. To that end, `statutes imposing restrictions upon the use of private property, in derogation of private property rights, must be strictly construed.'" Id. at 534, citing State v. Lilliock (1982),70 Ohio St.2d 23, 26.
 {¶ 14} Thus, failure to strictly comply with the notice requirements of R.C. 2933.43 renders a forfeiture inappropriate. Id.
 {¶ 15} Appellant contends that the Department did not "make or cause to be made reasonably diligent inquiries for the purpose of determining any person having an ownership or security interest in the property" pursuant to R.C. 2933.43. We agree. We first note that it was abundantly clear that Freedom did not own the machines in question. There is nothing in the record that could have led the Department to believe such. Thus, sending the notices of forfeiture to Freedom and Freedom's attorney was clearly not the result of any reasonably diligent effort to find the true owners.
 {¶ 16} Our review of the record reveals several sources the Department, with reasonable diligence, should have utilized to investigate the ownership of the machines seized from Scorchers. The most glaring starting point from which the Department should have commenced their investigation into the ownership of the machines was case No. 01CV-6454. A reasonably diligent inquiry into case No. 01CV-6454 would have led the Department to investigate Flare Game and Mid-Ohio as owners of the seized machines. Three months prior to the Department sending the notices of the forfeiture hearing in the present case, Flare Game and Mid-Ohio filed the complaint in case No. 01CV-6454, in which Flare Game and Mid-Ohio specifically admitted they owned the machines at Scorchers:
 {¶ 17} "16. [Flare Game and Mid-Ohio] state that on or about October 18, 2000, one Lucky Shamrock Dispenser, Phone Cards and a Tip Ticket Dispenser owned by [Flare Game and Mid-Ohio] were on the premises of Freedom Concepts, Inc., located at 1800 Merriman Road, Akron, Ohio 44313.
 {¶ 18} "* * *
 {¶ 19} "23. Upon the information belief, [Flare Game and Mid-Ohio] state that the Ohio Department of Public Safety and its agents continued to seize, confiscate and carry away with the intent to destroy the Lucky Shamrock Dispenser, Phone Cards and Tip Ticket Dispenser belonging to [Flare Game and Mid-Ohio]." (Emphasis added.)
 {¶ 20} Because the same assistant attorney general who sent the notices and represented the Department in the present case also answered the complaint and attended the hearing in case No. 01CV-6454, the Department was clearly aware that the owner of the machines in the present case was not Freedom, but, rather, Flare Game and Mid-Ohio. Further, Phil George executed an affidavit attached to the complaint in case No. 01CV-6454 indicating that he was the president of and statutory agent for Flare Game. James Jackson also attached an affidavit indicating that he was the president of and statutory agent for Mid-Ohio. Reasonable diligence would dictate that the Department contact George and Jackson to investigate and confirm Flare Game's and Mid-Ohio's ownership of the machines prior to sending the notices of forfeiture in the present case.
 {¶ 21} Also, the complaint in case No. 01CV-6454 indicated Flare Game was the exclusive distributor of Lucky Shamrock phone cards, which Pitre received while playing Lucky Shamrocks at Scorchers. With the knowledge from case No. 01CV-6454 that Flare Game was the exclusive distributor of Lucky Shamrock cards, the Department had further cause to, at the very least, investigate Flare Game's ownership of the Lucky Shamrock machine in the present case. Mid-Ohio also indicated in the complaint that it was engaged in selling, leasing, renting, and exhibiting the Popp-Open machines, which should have also given cause for the Department to investigate Mid-Ohio's ownership of the Popp-Open machine at issue in the current case.
 {¶ 22} We reject the Department's argument that it had no idea who owned the machines at Scorchers due to Gutentag's refusal in case No. 01CV-6454 to divulge the owners names. Before addressing this issue, we must first note that the present case was the last of three related forfeiture cases heard consecutively by the magistrate, and the testimony from all three hearings is transcribed in a single transcript submitted to this court for review. At the forfeiture hearing for the present case, the discussion relating to the events in case No. 01CV-6454 is very brief because the current case was the last of the three cases to be heard by the magistrate, and the parties had already discussed case No. 01CV-6454 in depth during the first two hearings. Thus, the more detailed discussion of the events in case No. 01CV-6454 actually occurred in the prior related forfeiture hearings. Because the testimony with regard to the events in case No. 01CV-6454 is equally applicable to all three cases, and both parties in the present case cite to the arguments from the other two forfeiture hearings, we will use the arguments from those hearings in addressing the issue in this case.
 {¶ 23} The Department argued at the forfeiture hearing that, in case No. 01CV-6454, Gutentag refused to tell who owned the gambling machines. Although the arguments on this issue made at the forfeiture hearings were somewhat confusing, we glean that the Department, in fact, never requested the names of the owners of the machines from Gutentag in case No. 01CV-6454, and Gutentag never refused to divulge such information. Rather, the information that Gutentag refused to divulge in case No. 01CV-6454 was the location and names of the liquor permit premises where Mid-Ohio's and Flare Game's other machines were located, as evident from the following exchange between the Department's attorney and the magistrate with respect to what transpired in case No. 01CV-6454:
 {¶ 24} "[Attorney]: We asked, we wanted to know the permit premises, that is the clients had machines there and the state, because there was going to be a TRO, we didn't go and raid them, seize the machines to be in contempt of court.
 {¶ 25} "Judge Johnson wanted the name of the premises and Mr. Gutentag refused to do that.
 {¶ 26} "The Magistrate: The name of the premises?
 {¶ 27} "[Attorney]: Permit premises. The vendors who claimed to be the two owners and had placed their vending machines —
 {¶ 28} "* * *
 {¶ 29} "The Magistrate: Hold on just a minute. Flare Gambling Technology, Inc. [sic], and Mid-Ohio, Inc., you asked for the number of permit premises that —
 {¶ 30} "[Attorney]: Where they were selling, leasing, exhibiting the tip ticket dispensing machines.
 {¶ 31} "You see, in the answer — denied knowledge to where those places were.
 {¶ 32} "* * *
 {¶ 33} "[Attorney]: * * * Mr. Gutentag would not agree that the conditions were — would not furnish the names of the premises because he said, I believe, given — the key to Pandora's box.
 {¶ 34} "Another Assistant Attorney General, Julie Brigner, had a telephone conference with Judge Johnson and Mr. Gutentag and since Mr. Gutentag would not give us the names of those premises, Judge Johnson denied the TRO."
 {¶ 35} Thus, it is apparent from a review of these discussions that it was the names of the other premises in which Flare Game and Mid-Ohio had placed their machines that Gutentag refused to divulge. The names of the owners of the machines at Scorchers were not asked and were not at issue, given Flare Game and Mid-Ohio had already specifically admitted in the complaint that they owned the machines seized at Scorchers. Therefore, the Department's argument is without merit. Accordingly, reasonable diligence should have led the Department to investigate Flare Game and Mid-Ohio as owners of the seized machines at Scorchers as a result of the proceedings in case No. 01CV-6454.
 {¶ 36} In addition, the investigator's report in the present case also included information that, with reasonable diligence, should have led the Department to investigate Flare Game as the owner of the Lucky Shamrock machine seized at Scorchers. Croft indicated in his November 15, 2000 investigator's report that the manager at Scorchers, Frank Gronowski, told him the Lucky Shamrock machine was owned and maintained by George Music out of Akron, Ohio. A telephone call to the secretary of state's office would have revealed that the statutory agent for George Music was Phil George. Although it appears as though Flare Game is the actual owner of the Lucky Shamrock machine, the Department could have then contacted Phil George at George Music to ask who owned the Lucky Shamrock machine. Evidence was attached to Freedom's objections to the magistrate's decision demonstrating that George Music's business address and telephone number were listed in the telephone book and on the Internet. Evidence was also presented at the forfeiture hearing that Flare Game was listed on the Lucky Shamrock machine as service representative. Although this does not prove ownership, reasonable diligence would include contacting the service representative to ask about ownership of the machine. Therefore, reasonable diligence would have included following the leads in the Department's own investigator's report.
 {¶ 37} We also add that, at the forfeiture hearings, the Department's attorney essentially admitted that the Department could have followed the leads given in the investigation report to discover the owners of the machines:
 {¶ 38} "The Magistrate: What about this argument that the investigation contained information —
 {¶ 39} "[Attorney]: It could be in there, but I — we asked pointblank for the information [in case No. 01CV-6454]. He wouldn't tell us. We have three thousand cases. I have over a hundred forfeitures on filed [sic].
 {¶ 40} "Sure, I mean, we could have but the statute says a reasonable inquiry. I think it's reasonable to ask counsel for that information. That is my argument."
 {¶ 41} Although the Department seems to contend that merely asking opposing counsel for the names of the machine owners in case No. 01CV-6454 constituted reasonable diligence, we disagree. As the Department admitted above, it could have used the information contained in the investigation report to investigate who owned the machines.
 {¶ 42} In addition, the magistrate found that it was never clear who the owners of the machines were, and, thus, the Department could not have served them with notice. However, this finding fails to acknowledge the reasonable diligence requirement. Even if the Department did not have definite knowledge of the owners of the machines, as it contended, R.C.2933.43 still mandated that they make a reasonably diligent inquiry into such. A diligent inquiry would have led the Department to know who the owners of the machines were prior to sending the notice of forfeiture hearing to Freedom and Gutentag.
 {¶ 43} We also reject the Department's contention that, because Gutentag was also the attorney for Flare Game and Mid-Ohio, Flare Game and Mid-Ohio had actual notice of the forfeiture hearing when it served Gutentag as Freedom's attorney. Actual notice is insufficient to comply with the strict mandates of R.C. 2933.43. See Akron v. Turner (1993),91 Ohio App.3d 595. Further, the statute directs that the owner of the property, not merely the owner's counsel, must receive notice by personal service or by certified mail. Therefore, this argument is not well-taken. For the foregoing reasons, Freedom's assignment of error is sustained.
 {¶ 44} Accordingly, Freedom's single assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for dismissal.
Judgment reversed and cause remanded.
PETREE, P.J., and McCORMAC, J., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.